# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

BRIAN DEATON,
    Plaintiff,

  vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-531

Beckwith, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 11), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed an application for DIB in November of 2008, alleging disability since February 25, 2008,[1] due to a back injury, a "shattered left knee," diabetes and asthma. (Tr. 199). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Deborah Smith. Plaintiff, a medical expert (ME) and a vocational expert (VE) appeared and testified at the ALJ hearing. On December 21, 2010, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] On November 23, 2010, plaintiff amended his alleged disability onset date to March 22, 2008. (Tr. 195).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004).   Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.   *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2012.

2. The [plaintiff] has not engaged in substantial gainful activity since March 22, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine; history of right bicep tendon rupture; bilateral carpal tunnel syndrome; adjustment disorder with depression; anxiety disorder NOS (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform the following: lift ten pounds occasionally and less than ten pounds frequently; sit six hours in an eight-hour day with the option to sit or stand up to five minutes every hour; standing/walking two hours in an eight-hour day; occasional posturals except no climbing of ladders, ropes, or scaffolds; frequent, but not constant use of hands; avoid concentrated exposure to cold, heat, wetness, humidity, and vibrations; no exposure to heights or hazards; no strict production requirements.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

---

[2]  Plaintiff's past relevant work was as a forklift operator, warehouse worker, car washer and saw operator.   (Tr. 20).

7. The [plaintiff] was born [in] 1969 and was 38 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 22, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 11-21).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[3] The ALJ relied on the VE's testimony to find that plaintiff could perform representative unskilled, sedentary occupations such as surveillance systems monitor (120 regional jobs and 22,000 national jobs), tube operator (100 regional jobs and 16,000 national jobs), and cutter and paster (1,700 regional jobs and 318,000 national jobs). (Tr. 21).

(1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

        The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.   Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of

Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).   *See also Wilson*, 378 F.3d at 545-46 (reversal

required even though ALJ's decision was otherwise supported by substantial evidence where

ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby

violating the agency's own regulations).

   **D.  Specific Errors**

        The medical findings and opinions of record have been adequately summarized in the

ALJ's decision and will not be repeated here.   (Tr. 11-18).   Where applicable, the Court will

identify the medical evidence relevant to its decision.

        On appeal, plaintiff argues that: (1) the ALJ erred at step five of the sequential evaluation

process by relying on mistaken VE testimony which the VE subsequently retracted; (2) the ALJ

erred by failing to give controlling weight to the opinions of plaintiff's treating physician; (3) the

ALJ erred by failing to account for all of plaintiff's severe impairments in the RFC finding; and

(4) the ALJ erred in assessing plaintiff's pain, credibility, and subjective complaints.

1.  **The ALJ erred by failing to properly weigh the opinions of plaintiff's treating physician.[4]**

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.  "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997).  *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).  *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion.  *See Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at 544.  These factors include the

---

[4] The Court will consider plaintiff's assignments of error in a different order than they were presented in the Statement of Errors.

length, nature and extent of the treatment relationship and the frequency of examination. 20

C.F.R. § 404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the

medical specialty of the source, how well-supported by evidence the opinion is, how consistent

the opinion is with the record as a whole, and other factors which tend to support or contradict

the opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart*, 710 F.3d at 376; *Wilson*, 378 F.3d at

544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always

give good reasons in [the] notice of determination or decision for the weight [given a] treating

source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[5]). Those

reasons must be "supported by the evidence in the case record, and must be sufficiently specific

to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Plaintiff contends that the ALJ failed to comply with applicable Social Security

regulations and case law when she did not give controlling weight to the assessment of plaintiff's

treating physician, Dr. Ayse Lee-Robinson, M.D., and instead gave "great weight" to the opinion

of the non-examining medical expert, Dr. Richard Hutson, M.D., who testified at the hearing.

(Doc. 6 at 2-3; Doc. 17 at 4-7). Plaintiff contends that the ALJ did not give "good reasons" for

declining to give controlling weight to Dr. Lee-Robinson's opinion, and the ALJ rejected the

opinions of Dr. Lee-Robinson solely on the ground that those opinions were not consistent with

the opinion of Dr. Hutson.

---

[5] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

Dr. Lee-Robinson, a specialist in electrodiagnostic medicine and rehabilitation, has

treated plaintiff since at least July 2009.  (Tr. 731).  Dr. Lee-Robinson completed a report

assessing plaintiff's physical impairments and functional capacity on November 3, 2010.  (Tr.

833-37).  Dr. Lee-Robinson's report assessed two things: whether plaintiff meets or equals

Listing 1.04A for Spinal Nerve Root Compression, and plaintiff's physical functional capacity

and limitations.   The initial part of the treating doctor's report tracks the specific requirements of

Listing 1.04A.[6]  Dr. Lee-Robinson diagnosed plaintiff with L4/5 and L5/S1 disc herniation,

lumbar radiculopathy, multilevel lumbar foraminal stenosis, and facet arthropathy with evidence

of nerve root compression and neuro-anatomic distribution of pain.  (Tr. 833).  Dr.

Lee-Robinson described the neuro-anatomic distribution of pain as lower back pain that radiated

down to the buttocks/hips to the thighs and bilateral knees, resulting in constant pain on a level

of 6-7/10.  Motion of the spine was limited.   Flexion was limited to 40 degrees, extension was

limited to less than 5 degrees, and right and left lateral bending was limited to 10 degrees.

Plaintiff had muscle weakness.   Right and left hip abduction and adduction was 4/5; toe

extension and flexion was 4-/5; and lateral toe extension and flexion ranged from 2/4 to 4/4.

Plaintiff also had some signs of motor loss and sensory or reflex loss.  (Tr. 833-34).  Dr.

Lee-Robinson reported some involvement of the lower back and positive straight leg raising in

---

[6] Listing 1.04A governs disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) and requires "compromise of a nerve root (including the cauda equina) or the spinal cord" with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A.

both the sitting and supine positions.  (Tr. 834).  She described the lower back involvement as muscle spasm and tenderness to palpation throughout the lumbar spine, S1, and right and left sciatic notch regions.  Dr. Lee-Robinson opined that plaintiff's back impairment equaled Listing 1.04A for Spinal Nerve Root Compression because his pain patterns, his abnormal neurological findings on examination, and his MRI were all consistent with bilateral L5 and S1 radiculopathy.

Dr. Lee-Robinson also assessed plaintiff's RFC.  The treating physician assessed that plaintiff was able to walk less than one city block without rest or severe pain; sit 10 minutes before he needed to get up; stand 10 minutes before he needed to sit down or walk around; sit less than two hours in an eight-hour working day; stand/walk less than two hours in an eight-hour working day; and walk every 10 minutes for approximately 5 minutes in an eight-hour working day.  (Tr. 835).  Dr. Lee-Robinson assessed plaintiff as rarely able to lift less than ten pounds; rarely able to twist, crouch/squat, or climb stairs; and never able to stoop or climb ladders.  (Tr. 836).  She opined that plaintiff can use his hands and fingers less than 25% of the day for grasping, turning and twisting objects, and fine manipulation, and less than 5% of the day for reaching.  Dr. Lee-Robinson also estimated that plaintiff is likely to be absent from work more than four days per month.

The ALJ gave "little weight" to the RFC opinion of Dr. Lee-Robinson (Tr. 18), explaining that the treating physician's conclusions were "not consistent with the objective medical evidence of record, including [his] own treatment records, as explained by Dr. Hutson at the hearing."  (*Id.*).  Aside from this single sentence, the ALJ provided no further explanation as to why Dr. Lee-Robinson's assessment of plaintiff's functional capacities was not entitled to controlling or great weight.  Because the ALJ failed to give "good reasons" for declining to give

9

controlling or greater weight to the functional capacity assessment of plaintiff's treating physician, Dr. Lee-Robinson, *Cole*, 661 F.3d at 937, plaintiff's first assignment of error should be sustained.

First, the ALJ failed to identify the objective medical evidence that was purportedly inconsistent with Dr. Lee-Robinson's assessment. The ALJ generally asserted that Dr. Lee-Robinson's conclusions were not "consistent with the objective medical evidence of record." (Tr. 18). However, the ALJ did not specify any objective evidence of record that purportedly contradicted Dr. Lee-Robinson's assessment of plaintiff's functional capacity or point out any purported inconsistencies with the treating physician's own medical records. Given the ALJ's failure to cite any specific evidence to show Dr. Lee-Robinson's assessment of plaintiff's functional capacity was not consistent with the medical evidence of record, the Court is unable to perform a meaningful review of whether the ALJ properly applied the treating physician rule under 20 C.F.R. § 404.1527(c)(2). *See Gayheart*, 710 F.3d at 377; *Wilson*, 378 F.3d at 546.

Instead of citing to specific medical evidence that contradicted Dr. Lee-Robinson's assessment, the ALJ generally referenced the purported explanation provided by Dr. Hutson at the hearing. (Tr. 18). Examination of Dr. Hutson's hearing testimony, however, fails to reveal any testimony from Dr. Hutson explaining how Dr. Lee-Robinson's assessment of plaintiff's functional capacity was inconsistent with the objective medical evidence or the treating physician's own records. Rather than commenting on whether Dr. Lee-Robinson's functional capacity assessment was or was not supported by the objective and clinical evidence, Dr. Hutson's testimony focused on whether plaintiff met or equaled the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).

At the ALJ hearing, Dr. Hutson commented on two aspects of Dr. Lee-Robinson's opinion relating to whether plaintiff met Listing 1.04A: neuro-anatomic distribution of pain and positive straight leg raising. (Tr. 80-83). Dr. Hutson disagreed with the treating physician's opinion that plaintiff demonstrated the neuro-anatomic distribution of pain and the positive straight leg raising required by Listing 1.04A. Dr. Hutson believed the pain described by Dr. Lee-Robinson did not qualify as a neuro-anatomic distribution of pain under Listing 1.04A because it radiated only to the knee rather than to the bottom of the foot. (Tr. 80-81). Dr. Hutson also testified that while plaintiff in fact demonstrated "positive straight leg raising" at times, the positive straight leg raising test reported by Dr. Lee-Robinson was not a "true straight leg raising test" indicative of sciatic nerve irritation required by Listing 1.04A because plaintiff's pain radiated to the buttocks area and down to the knee, but not to the bottom of the foot. (Tr. 81-82). Dr. Hutson opined that the findings "are not neuro anatomical as this listing states." (Tr. 82).

While Dr. Hutson's testimony explains why he disagreed with Dr. Lee-Robinson that plaintiff met or equaled Listing 1.04A, Dr. Hutson never addressed the treating physician's assessment of plaintiff's physical functional capacity for purposes of the RFC assessment. As a result, the ALJ's decision which relies solely on Dr. Hutson's "explanation" is not sufficiently specific to make clear to this Court the reasons for giving only "little weight" to the treating physician's functional capacity assessment. *Cole*, 661 F.3d at 937. Nor can the Court assume that Dr. Hutson's rationale for disagreeing with the treating physician on the Listing issue applies equally to the RFC question. The RFC assessment is analytically distinct from the Listing analysis. The RFC assessment requires the identification of a claimant's functional limitations

11

or restrictions and evaluation of his or her work-related abilities on a function-by-function basis. Social Security Ruling 96-8p.  In contrast, the Listing of Impairments sets forth certain medically determinable impairments which are presumed to be of sufficient severity to prevent the performance of any gainful activity, regardless of age, education, or work experience.  20 C.F.R. § 404.1525(a).  Whether plaintiff has the requisite neuro-anatomical or straight leg raising findings for Listing 1.04A says little about whether plaintiff retains the residual functional capacity to do the sitting, standing, walking, and lifting for sedentary work.  It is not apparent how failing to meet particular elements of a listed impairment translates into particular functional abilities.  Without any further explanation by the ALJ, the Court is at a loss as to why the ALJ believed that Dr. Lee-Robinson's functional capacity assessment was not supported by the objective and clinical evidence of record, particularly in light of the detailed physical examinations she performed each time she treated plaintiff (Tr. 747-813) and the MRI and EMG tests that provide objective evidence of the underlying conditions for which plaintiff received treatment.  (Tr. 255, 738).

To be sure, Dr. Hutson testified that he believed plaintiff would be able to perform sedentary work with a sit/stand option, which the ALJ credited.  (Tr. 18, 83).  Yet, Dr. Hutson never explained why he believed the exertional limitations for less than sedentary work found by Dr. Lee-Robinson were not supported by the objective evidence or the treating physician's own progress notes.  Thus, to the extent the ALJ relied on Dr. Hutson's "explanation" in support of her "good reasons" for declining to give controlling or even deferential weight to Dr. Lee-Robinson's functional capacity assessment, that reason is deficient as a matter of law.  In the absence of any identification of the particular evidence relied on by the ALJ for the ultimate

RFC finding, there is merely a conflict between the treating physician and non-examining medical advisor on plaintiff's functional capacity.   As recently explained by the Sixth Circuit under similar circumstances:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors.   Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.   Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart*, 710 F.3d at 377.

Second, there is no indication in the ALJ's decision that she considered the § 404.1527(c) factors when weighing Dr. Lee-Robinson's opinions.   Under the Social Security regulations, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing former 20 C.F.R. § 404.1527(d)).   The ALJ's failure to consider the regulatory factors is particularly troubling here in light of Dr. Lee-Robinson's area of specialization, length of treatment relationship with plaintiff, regular examinations of plaintiff, and reliance on objective MRI and EMG evidence.

The ALJ's decision reflects that she relied solely on the conflicting opinion of the medical expert, Dr. Hutson, in deciding to give "little weight" to Dr. Lee-Robinson's opinion.

The ALJ's failure to identify the evidence supporting her finding that Dr. Lee-Robinson's

conclusions were not consistent with the medical evidence of record, her failure to consider the

factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the

opinion, and her failure to provide "good reasons" for her decision to discount Dr.

Lee-Robinson's opinion require a reversal and remand for further proceedings. *See Blakley*, 581

F.3d at 407 (ALJ's failure to adequately explain reasons for weight given a treating physician's

opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be

justified based upon the record."). Plaintiff's second assignment of error should be sustained.

### 2. The ALJ erred by failing to account for all of plaintiff's mental limitations in the hypothetical posed to the VE.

Plaintiff alleges as his third assignment of error that the ALJ failed to account for all of

his mental limitations in the RFC finding and in the hypothetical presented to the VE. (Doc. 6 at

3; Doc. 17 at 8-9). Plaintiff asserts that because the hypothetical the ALJ propounded to the VE

failed to include all of his mental limitations, the ALJ was not entitled to rely on the VE's

testimony to find he could perform a significant number of jobs. The Commissioner argues that

the ALJ accounted for plaintiff's severe mental impairments and accompanying limitations in

concentration and stress tolerance by restricting him to "work without any strict production

requirements." (Doc. 11 at 6-7, citing Tr. 16, 19).

At the hearing, the ALJ posed a hypothetical to the VE that assumed the individual would

need to "avoid high stress work meaning that [he] should not do work with strict production

requirements." (Tr. 89). The VE responded that the hypothetical individual would be able to

perform 970 unskilled sedentary jobs in the region and 174,000 jobs in the national economy.

14

(Tr. 90-94). The ALJ included a limitation of "no strict production requirements" in the RFC finding. (Tr. 16).

Plaintiff argues that the ALJ was required to include additional limitations based on her own findings and those of the consultative and state agency psychologists. Specifically, plaintiff alleges that the ALJ erred by failing to include in the hypothetical moderate limitations in concentration, persistence or pace and some impairment of short-term and working memory. (Doc. 6 at 3, citing Tr. 14). Plaintiff notes that the ALJ found in her decision that he suffers from these limitations. (Tr. 14). Plaintiff contends that the ALJ also erred by failing to include moderate limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace and without an unreasonable number and length of periods off task. (Doc. 6 at 3). Plaintiff asserts that the ALJ relied on the assessment of the state agency reviewing psychologist, Dr. Carl Tischler, Ph.D., to find plaintiff had a severe mental impairment, and Dr. Tischler assessed plaintiff as moderately impaired in this area of mental functioning. (*Id.*, citing Tr. 481).

In rendering the RFC finding, the ALJ gave "great weight" to the assessments of consultative examining psychologist Dr. Jayne M. Malpede, Ph.D., and non-examining state agency psychologist, Dr. Tishler. (Tr. 13). Dr. Tishler issued an assessment on March 10, 2009, in which he opined that plaintiff had no restrictions in his activities of daily living; no difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration. (Tr. 494). Dr. Malpede evaluated plaintiff on February 10, 2009. (Tr. 468-73). Dr. Malpede found there was mild impairment in short-term memory and concentration as well as working memory. (Tr.

15

472).  Dr. Malpede concluded that plaintiff's ability to relate to others, including fellow workers and supervisors, was not impaired; his ability to understand and follow directions was not impaired; his ability to maintain attention to perform routine tasks was mildly impaired; and his ability to withstand the stress and pressure associated with day-to-day work activity may be compromised.  (Tr. 472-73).  The ALJ found that plaintiff experiences moderate limitation in concentration, persistence or pace; there was some impairment in short-term memory and concentration as well as working memory; and plaintiff's stress tolerance was moderately reduced.  (Tr. 14, 15).

A VE's testimony does not constitute substantial evidence if the hypothetical does not adequately describe the claimant's physical and mental limitations.  *Lancaster v. Commissioner of Social Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007).  *See also Renn v. Commissioner of Social Sec.*, No. 1:09-cv-319, 2010 WL 3365944, at *6 (S.D. Ohio August 24, 2010) (Beckwith, S.J.).  The Sixth Circuit has recognized that a VE's conclusion based on a hypothetical which fails to include a claimant's restrictions in concentration, persistence or pace does not serve as substantial evidence of the claimant's ability to work.  *See Ealy v. Commissioner of Social Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010).  This Court has likewise recognized that where a hypothetical fails to include the plaintiff's moderate deficits in memory, attention, and concentration, the VE's testimony does not constitute substantial evidence that the plaintiff can perform his or her past relevant work.  *See Renn*, 2010 WL 3365944, at *6.  *See also Herriman v. Apfel,* No. 99-cv-73489-DT, 2000 WL 246598, at **2-3 (E.D. Mich. Feb. 11, 2000) (hypothetical limiting the plaintiff to simple unskilled work with limited contact with the public constituted error because it failed to take into account plaintiff's deficiencies in concentration);

16

*Falconi v. Commissioner of Social Sec.*, No. 1:08cv622, 2009 WL 3790176, at *10 (S.D. Ohio Nov. 11, 2009) (limitations that the plaintiff was able to "perform simple, routine, repetitious work in a low stress environment with no strict production requirement" did not adequately address the limitation of "ability to complete a normal workday, to maintain attention and concentration for extended periods, and to work within a schedule and maintain regular attendance.").

On the other hand, several Courts have held that a hypothetical to the VE limiting the claimant to no quotas or production line work adequately accounted for moderate limitations in concentration, persistence or pace. *See Schooley v. Astrue*, No. 09cv2748, 2010 WL 5283293, at *2 (N.D. Ohio Dec. 17, 2010) (hypothetical limiting the plaintiff to no "high production quotas or piece work" consistent with a moderate limitation in concentration, persistence or pace); *King v. Commissioner of Social Security*, No. 09-14851, 2010 WL 6335509, at *8 (E.D. Mich. Sept. 29, 2010) (ALJ incorporated the plaintiff's moderate limitations in concentration, persistence or pace by including a restriction on production line work, which accounted for any difficulty the plaintiff would have meeting quotas or working at a persistent pace), *Report and Recommendation Adopted in Part, Rejected in Part*, No. 09-14851, 2011 WL 1135475 (E.D. Mich. March 28, 2011). *See also Smith v. Halter*, 307 F.3d 377, 380 (6th Cir. 2001) (ALJ's restriction in hypothetical to VE on jobs with quotas adequately addressed issue that concentration issues might preclude timely completion of work). In most of these cases, the Court determined that a restriction against jobs with quotas was sufficient to take into account moderate limitations in pace. This Court indicated in *Ball v. Commissioner of Social Security*, No. 1:09-cv-684, 2011 WL 765978, at *4 (S.D. Ohio Feb. 25, 2011) (Beckwith, S.J.), however,

17

that such a restriction is not sufficient to take into account moderate limitations in concentration

and persistence.   The Court determined that while excluding fast-paced production requirements

addressed the moderate limitation on pace, such a restriction did not address the ability to stay

"on task" for a sufficient length of time during the workday, an ability which the Court noted

involves aspects of concentration as well as pace.   *Id.*   Thus, the Court in *Ball* determined that

the VE's testimony in the case before it that no jobs would be available if limitations in

concentration and persistence caused occasional breaks or being off task 20% of the time

suggested the plaintiff's moderate limitations in concentration, persistence and pace might render

the plaintiff unemployable.

Based on these precedents, the Court finds that the ALJ's hypothetical to the VE in the

present case failed to accurately summarize the mental limitations that the ALJ found to be

supported by the evidence.   The hypothetical included a restriction against "high stress work,"

which the ALJ defined as work "with strict production requirements."   (Tr. 89).   This limitation

took into account plaintiff's moderate difficulties in maintaining pace.   However, the restriction

against strict production requirements failed to account for plaintiff's moderate limitations in

concentration and persistence and stress tolerance that the ALJ found to be supported by the

evidence of record.   (Tr. 14, 15, 19).   Thus, the ALJ's hypothetical to the VE does not

accurately reflect plaintiff's mental limitations.[7]

The ALJ therefore erred at Step 5 of the sequential evaluation process by relying on the

VE's vocational testimony.   *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir.

---

[7] The ALJ did not err by failing to include additional limitations to account for memory impairment.   (*See* Doc. 17 at 8).   Dr. Malpede found plaintiff had a "mild" memory impairment (Tr. 472), but there is no indication in the record that plaintiff's impairment in this area of functioning was more than mild, and Dr. Malpede did not impose any functional limitations to account for memory impairment.   (Tr. 472-73).

18

2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Because the ALJ's hypothetical question failed to accurately portray plaintiff's impairments, the VE's testimony in response thereto does not constitute substantial evidence that plaintiff could perform the work identified by the VE. Therefore, plaintiff's fourth assignment of error should be sustained.

### 3. The ALJ erred by relying on erroneous VE testimony.

Plaintiff contends that the ALJ erroneously relied on testimony the VE gave at the ALJ hearing and then retracted concerning the number of sedentary unskilled jobs available in the regional economy. (Doc. 6 at 1-2). At the hearing, the VE initially testified that a hypothetical individual with the functional limitations the ALJ described could perform the unskilled sedentary jobs of surveillance systems monitor, with 120 jobs in the regional economy and 22,000 jobs in the national economy; tube operator, with 100 jobs in the regional economy and 16,000 jobs in the national economy; and cutter and paster, with 1,700 jobs in the regional economy and 318,000 jobs in the national economy. (Tr. 21). However, during cross-examination, the VE corrected her testimony and stated there were only 750 sedentary cutter and paster jobs available in the regional economy and 136,000 such jobs available in the national economy. (Tr. 90-94). This correction reduced the total number of jobs available in the regional economy to 970 and the total number of jobs available in the national economy by nearly half. (Tr. 94). The ALJ relied on the VE's uncorrected testimony to find that plaintiff could perform 1,920 unskilled sedentary jobs in the regional economy, citing as examples of such jobs surveillance systems monitor (120 regional jobs and 22,000 national jobs), tube operator

19

(100 regional jobs and 16,000 national jobs), and cutter and paster (1,700 regional jobs and 318,000 national jobs).  (Tr. 21).  Plaintiff asserts that the ALJ's error cannot be corrected by simply accepting the reduced number of jobs as significant because the ALJ must examine the number of jobs on a case-by-case basis and evaluate the claimant's particular factual situation. (Doc. 17 at 3, citing *Born v. Sec'y*, 923 F.2d 1168, 1174 (6th Cir. 1990) (decision as to what constitutes a significant number of jobs must be made on a case-by-case basis and ultimately must be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation, with criteria to be considered including "the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; [and] the types and availability of such work. . . .") (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)).

The Commissioner concedes the ALJ relied on the incorrect number of jobs that the VE initially identified.  (Doc. 11 at 4-5).  The Commissioner asserts that the ALJ nonetheless reasonably relied on the VE's testimony to find there were a significant number of jobs plaintiff could perform because the VE indicated there were additional jobs available that she did not identify (Tr. 94), and the revised number of jobs the VE provided constitute a significant number. (Doc. 11 at 4-5, citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374-75 (6th Cir. 2006) (even if disputed jobs were eliminated, there were sufficient positions in national and regional economy to constitute a significant number of jobs); *Nash v. Sec'y of Health & Human Servs.*, No. 94-5376, 1995 WL 363381, at *3 (6th Cir. June 5, 1995) (70,000 jobs in the national economy constituted a significant number under the facts of that case).

The Court need not resolve the issue of whether the jobs identified by the VE constitute a significant number.  Because the ALJ's hypothetical question to the VE failed to accurately portray plaintiff's impairments and accompanying limitations as explained in the previous assignment of error, the VE's testimony does not constitute substantial evidence that plaintiff could perform any of the jobs identified by the VE.  Accordingly, the ALJ was not entitled to rely on the VE's corrected testimony to find that plaintiff could perform a significant number of jobs.  Plaintiff's first assignment of error should therefore be sustained.

### 4.  The ALJ did not err in assessing plaintiff's credibility.

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981).  Plaintiff alleges that the Court should not defer to the ALJ's credibility determination in this case because the ALJ mischaracterized the evidence in three discrete instances.  (Doc. 6 at 3-4).  The Commissioner contends that the ALJ did not mischaracterize the record in any of the respects alleged by plaintiff.

Plaintiff has not shown that the ALJ's credibility determination should be disturbed for the reasons alleged.  First, plaintiff contends that the ALJ incorrectly stated that a medical report of record showed that plaintiff wanted to stop epidural steroid injections because they were too expensive.  (Doc. 6 at 3, citing Tr. 30, 531).  The medical report the ALJ cited noted plaintiff had been going to a pain specialist and paying $40.00 every two weeks for the visits and $3,000.00 for epidural steroid injections, which helped minimally, and that he wanted to stop

going to the pain specialist due to the cost.   (Tr. 531).   Plaintiff has not shown the ALJ misrepresented the record in this regard.

Second, plaintiff contends that the ALJ mischaracterized the record by relying on plaintiff's "supposed statements that he was not interested in surgery."   (*Id.* at 4, citing Tr. 342). Plaintiff faults the ALJ for neglecting to state that the reason plaintiff was hesitant to undergo back surgery was because he was the caregiver for his 5-year old daughter as reflected in the treatment notes.   The treatment notes from 2008 note that plaintiff reported he was hesitant to undergo back surgery for this reason.   (Tr. 342).   The ALJ nonetheless did not misstate the record in any sense by accurately noting that plaintiff was not interested in surgery as of September 2008 but wanted to continue with conservative treatment.   (Tr. 12).

Finally, plaintiff asserts that the ALJ mischaracterized the record by placing undue emphasis on an incident in which plaintiff re-injured himself while trying to move a heavy piece of furniture, questioning why plaintiff would have been performing heavy lifting in the face of disabling pain, (*Id.*, citing Tr. 16), and failing to acknowledge that plaintiff told his treating providers he knew he should not be attempting to move the furniture but he did so to get it out of the rain.   (*Id.*, citing Tr. 786).   Again, plaintiff has not shown the ALJ mischaracterized the record in any respect.   Moreover, the ALJ was entitled to take this incident into account when assessing plaintiff's credibility, regardless of the reason plaintiff gave for his decision to lift a heavy piece of furniture.

Thus, plaintiff has not shown that the ALJ erred by mischaracterizing evidence bearing on his credibility and that the ALJ's credibility determination should be disturbed on the grounds alleged.   Plaintiff's fourth assignment of error should be overruled.

**5. This matter should be reversed and remanded.**

Remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id. See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *See Faucher,* 17 F.3d at 176. On remand, the ALJ should weigh the medical opinions of record and fully articulate her rationale in support of her findings. The ALJ must also provide hypothetical questions to the VE which accurately portray plaintiff's impairments and resulting mental limitations.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: _6/12/13_ 

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN DEATON,                                     Case No. 1:12-cv-531
     Plaintiff,                                  Beckwith, J.
                                                  Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).